**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **RICHARD COUGHLIN**<br>FEDERAL PUBLIC DEFENDER | 1002 Broad Street<br>Newark, New Jersey 07102 | **CHESTER M. KELLER**<br>FIRST ASSISTANT |

(973) 645-6347   Telephone
(973) 645-3101   Facsimile

February 22, 2021

Honorable James B. Clark, III U.S.M.J.
MLK, Jr. Federal Building and U.S. Courthouse
50 Walnut Street
Newark, N.J. 07101-0999

    Re:    United States v. Joseph Rubino
              <u>Mag. No. 19-6293</u>

Dear Judge Clark:

    Please accept this letter brief in lieu of a formal memorandum requesting to release Joseph Rubino on bond pending trial in this matter. Mr. Rubino is presently detained in the Hudson County Correctional Facility, (HCJ), pending the resolution of a complaint charging him with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g).

    On August 22, 2019, Mr. Rubino appeared before Your Honor for his initial appearance on the above-mentioned charges. At that time, his bail application was denied. On October 19, 2019, he made another bail application, which was also denied. Mr. Rubino appealed this Court's decision to the District Court. Honorable John Michael Vazquez continued Mr. Rubino's detention, denying his appeal on April 23, 2020. (20-314 (JMV)). Mr. Rubino then filed a motion for reconsideration. On May 29, 2020, Judge Vazquez heard oral arguments and denied Mr. Rubino's motion of reconsideration.

    For the reasons discussed below, although this Court determined that no condition or combination of conditions will reasonably assure Mr. Rubino's appearance as required and the safety of any other person and the community, it may nevertheless temporarily order Mr. Rubino's release on bail under 18 U.S.C. 3142(i), to the extent that this Court determines such release to be necessary for another compelling reason, such as Mr. Rubino's failing health, medical conditions and risk of exposure to COVID-19.

___

**I.     Mr. Rubino should be released on bail under 18 U.S.C. 3142(i) because release is necessary for a compelling reason - Mr. Rubino's medical conditions and risk of exposure to COVID-19 in a prison setting and suffering with severe illness were he to contract COVID-19.**

The text of Section 3142(i) provides that the Court may temporarily release a detained defendant to the custody of an "appropriate person" where a "compelling reason" necessitates such release. Even before COVID-19, a defendant's serious medical conditions could warrant release. *See, e.g., United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail "retains the ability to request[,] ... in extraordinary circumstances, ... temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (finding "compelling reason" to temporarily release defendants due to serious medical issues); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (same). Furthermore, family members may constitute "appropriate persons" where the defendant is released to relatives and placed under house arrest. *See Cordero Caraballo*, 185 F. Supp. 2d at 145 (releasing the defendant, who the court would have detained on dangerousness grounds, to the custody of his mother and grandmother on 24-hour house arrest due to his severe injuries). Subsection (i) then is reserved for cases like Mr. Rubino, where traditional bail factors may weigh against his release, but circumstances now "compel" a different result. The COVID-19 pandemic and Mr. Rubino's deteriorating health and medical conditions present just that compelling reason requiring temporary release here.

Since the COVID-19 pandemic, courts have addressed bail applications under 3142(i) recognizing that a defendant's medical condition may be sufficient in a particular case. *See United States v. Clark*, 448 F. Supp.3d 1152 (D. Kan. 2020). The court "must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case." *Id*. at 1156-1157. In making that determination, the following factors are considered: "(1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *Id*. at 1157. These factors are not necessarily weighed equally but considered as a whole. *Id*. Mr. Rubino bears the burden of establishing the circumstances which constitute a compelling reason for relief under 18 U.S.C. § 3142(i). *Id*. at 1155. (*citing United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan 18, 2013) (collecting cases)).

### A. The original grounds for the defendant's pretrial detention

In two prior bail hearings, this Court has already stated its reasons for detaining Mr. Rubino. "These reasons should be taken into consideration in determining whether a defendant has presented such compelling reasons for temporary release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order." *Clark*, 448 F.Supp.3d at 1157.

This Court held that Mr. Rubino was unable to overcome the rebuttable presumption of incarceration, finding that the nature and circumstances of the offense weighed heavily against him and that the safety of the community would not be protected by his release. The court was not persuaded that Mr. Rubino posed a risk of flight and did not make such a finding.

Understandably, this Court expressed concern about the number of firearms and firearms-related items listed in the complaint. However, nothing in Mr. Rubino's background indicates he is a violent person, nor has he been convicted of any crimes of violence. The mere possession of firearms is not itself a crime of violence. And notwithstanding the fact that there were distasteful pamphlets and other materials recovered at the location of Mr. Rubino's arrest, the government has not presented any evidence that Mr. Rubino is a member of any hate group. Mr. Rubino's release will not place the public at risk.

The compelling reasons in this case – that Mr. Rubino's declining health and medical conditions present heightened risks to him in light of the pandemic - counterbalance the Court's concern regarding the nature and circumstances of the offense and Mr. Rubino's dangerousness.

### B. The specificity of the defendant's stated COVID-19 concerns

Mr. Rubino suffers from asthma, obesity, hypertension, hyperlipidemia, Hepatitis C, and a kidney disorder. Additionally, his legs have been constantly retaining water, causing the jail to suspect that he may be suffering from a heart condition. HCJ performed an electrocardiogram (EKG) in its attempts to determine whether the water retention was a result of a heart condition. Thereafter, he was transported to St. Michael's Hospital in Newark to see a cardiologist. Unfortunately, due to a mix-up, the EKG results were not provided to the doctor. Mr. Rubino is now waiting for the jail to schedule another appointment with the cardiologist. In the meantime, he continues to retain water in his legs but remains in the dark regarding the status of his heart.

Mr. Rubino's medical conditions, specifically, his asthma, obesity (BMI 36.2, noted on 11/11/20), Hepatitis C and hypertension make him highly susceptible to serious illness or death if he contracts COVID-19.[1] Mr. Rubino's health conditions are well documented in the medical records obtained by counsel.[2] Additionally, in consideration of Mr. Rubino's bail appeal before Judge Vazquez on May 29, 2020, Mr. Rubino's former counsel provided an independent doctor's evaluation of his medical records. *See* ECF 20-314 (JMV), Docket Entry 6-2.  Since that time, it is apparent that Mr. Rubino's health has deteriorated, and that HCJ is not doing an adequate job addressing his medical needs.

According to the CDC, individuals with moderate to severe asthma "may be at higher risk of getting very sick from COVID-19.  COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."[3]   Additionally, Mr. Rubino's Hepatitis C, and the damage to his liver may also increase his risk for severe illness from COVID-19. *Id.*

Hypertension is also a deadly complication with COVID-19. A recent study published in the Journal of the American Medical Association (JAMA) found that among 5700 patients in New York City who were hospitalized with COVID-19, the most common underlying medical conditions were hypertension (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent).  Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* JAMA.[4] Similarly, as noted in an opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1 (D. Md. Apr. 3, 2020).

Obesity has been identified as a significant risk factor for being hospitalized with COVID-19.[5]  Recent studies show that although people with obesity frequently have other medical problems, this one condition, after only older age, is the most significant risk factor for being hospitalized with COVID-19. *Id.*  In fact, as data has emerged from

---

[1] *See* Center for Disease Control list of comorbidities that increase a person's risk of severe illness or death. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[2] Mr. Rubino's patient summary profile will be provided to the Court and the United States but will not be filed on ECF.  Counsel can provide Mr. Rubino's full medical records.

[3]   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html

[4] Available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

[5]  *See* R. Rabin, *Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients* (Apr. 16, 2020), *available at* https://www.nytimes.com/2020/04/16/health/coronavirus-obesity-higher-risk.html.

the CDC about those who have been hospitalized, NPR reported that about half had been obese.[6]  As discussed on NPR, obesity is a marker for other health problems, and the overall health of those who are obese is often compromised. *Id*. It is believed that the immune systems of those who are obese are less effective in fighting off viruses. *Id*.

Further, whatever risk Mr. Rubino could arguably present must be balanced against the very real and present risk to his health and life, as Mr. Rubino is confined in the HCJ and that facility has had active COVID-19 cases that pose an extreme risk to his health. Notwithstanding HCJ's protocols that have been put in place in response to COVID-19, in January 2021, the facility had 11 positive COVID-19 cases.[7]  The reality is HCJ cannot protect Mr. Rubino.

Pretrial confinement will only increase Mr. Rubino's already heightened risk of exposure, infection, and serious illness.  Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[8]  Inmates cycle in and out of BOP pretrial facilities from communities around the state and beyond, and employees leave and return daily, at times without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[9]  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[10]  Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[11]

The risk to Mr. Rubino and to others can be lowered by his release to home confinement, where the public health imperative of social distancing is possible, and that goal can be accomplished without risk of flight or danger to the community.

---

[6] *See* A. Aubrey, *Who's Hit Hardest By COVID-19? Why Obesity, Stress and Race All Matter* (Apr. 18, 2020), *available at* https://www.npr.org/sections/health-shots/2020/04/18/835563340/whos-hit-hardest-by-covid-19-why-obesity-stress-and-race-all-matter.

[7] *See* 11 inmates with COVID now in isolation at Hudson County jail - nj.com

[8] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *available at* https://doi.org/10.1086/521910.

[9] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *available at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[10] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *available at* https://bit.ly/2W9V6oS.

[11] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020), *available at* https://bit.ly/2TNcNZY.

Moreover, releasing Mr. Rubino would be entirely consistent with the advice of medical experts, who have advised that jails and prisons should focus on reducing prison population in order to reduce the risk of spreading the coronavirus.[12] For example, Joseph Amon, an epidemiologist and director of the Office of Global Health at Drexel University advises "one option he and other public health experts said corrections officials could take is reducing jail populations … as things stand, jails do the opposite of social distancing, which the CDC and other public health agencies recommend as a way for people to avoid spreading the virus."[13]

In light of the heightened risk for experiencing severe illness should he contract COVID-19, given his underlying medical conditions, counsel submits that Mr. Rubino meets the criteria for pretrial release at this time, pursuant to 18 U.S.C. § 3142(i). Mr. Rubino understands that cases requesting release based on COVID-19 concerns must be addressed on a case-by-case basis. He understands that they are not easy decisions, and further require risk balancing by the Court. No one wants someone's health and actual life to be endangered when there is a viable alternative that would allow for a defendant's release from custody with safeguards to adequately protect the community.

### C. The extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant

Mr. Rubino is proposing to be released on an unsecured bond in an amount that the Court deems appropriate, cosigned by two individuals, Gary Matarazzo and William Lang. Mr. Rubino would live with Mr. Lang, who will serve as a third-party custodian and will ensure his return to Court for any hearings scheduled in his case. Mr. Rubino would comply with any other terms and conditions of pretrial release that this Court orders — including electronic, telephonic, or any other type of monitoring devised in this era of "social distancing." Mr. Rubino is specifically proposing home confinement with electronic monitoring as a condition of his release.

Upon release, Mr. Rubino would be picked up from the facility and driven directly to Mr. Lang's family home. Also living in the home are Mr. Lang's wife and adult son. The home is spacious enough for Mr. Rubino to maintain social distancing within the home. But for his necessary medical care, he would remain inside and would not place other individuals at risk. Mr. Lang and his family have been following the CDC recommendations for minimizing the risk for exposure to COVID-19. Mr. Rubino understands that by living with them he will be expected to do the same.

---

[12] *Crowded Conditions, Close Contact Behind Bars Complicate Public Health Challenge*, WHYY (March 14, 2020), *available at* https://whyy.org/articles/crowded-conditions-close-contact-behind-bars-complicate-public-health-challenge/.

[13] *Id.*

### D. The likelihood that the defendant's proposed release would increase COVID-19 risks to others

Mr. Rubino's is proposing a temporary release where he would be on home confinement. Nothing in Mr. Rubino's background suggests he would not abide by the conditions set by this Court. Mr. Rubino successfully completed a three-year probationary sentence in the past which included community service. Mr. Rubino will abide by all conditions of release ordered by this court.

For all these reasons, this Court should temporarily release Mr. Rubino on bail pending trial.

Respectfully submitted,

s/Linda D. Foster
Assistant Federal Public Defender


cc: Naazneen Khan, AUSA
    Mia Rahman, Pretrial Services